# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| CLIFFORD BOYNES, CHRIS CHRISTIAN, MARGARET THOMPSON, DELIA ALMESTICA, CARLOS CHRISTIAN, MINOR CHILD "J.M.M.", MINOR CHILD "V.M.", MINOR CHILD "Z.R.C.", MINOR CHILD "M.M", MINOR CHILD "O.N.", ANNA REXACH-CONSTANTINE, MERVYN CONSTANTINE, NEAL DAVIS, EDNA SANTIAGO, GUIDRYCIA WELLS, O'SHAY WELLS, AARON G. MAYNARD, VERNE MCSWEEN, , ROCHELLE GOMEZ, , JOAN MATHURIN, MYRNA MATHURIN, , ANN MARIE JOHN-BAPTISTE, WARRINGTON CHAPMAN and LEOBA JOHN-BAPTISTE-PELLE, on behalf of themselves and all others similarly situated, | **Case No.** 3:21-cv-00252<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| Plaintiff, | |
| v. | |
| LIMETREE BAY VENTURES, LLC; LIMETREE BAY REFINING, LLC; LIMETREE BAY TERMINALS, LLC; ARCLIGHT CAPITAL PARTNERS, LLC; FREEPOINT COMMODITIES, LLC; EIG GLOBAL ENERGY PARTNERS, LLC; BP PRODUCTS NORTH AMERICA, INC.; and JOHN DOES 1-100, | |
| Defendants. | |

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

Plaintiffs CLIFFORD BOYNES, CHRIS CHRISTIAN, MARGARET THOMPSON, DELIA ALMESTICA, CARLOS CHRISTIAN, MINOR CHILD "J.M.M.", MINOR CHILD "V.M.", MINOR CHILD "Z.R.C.", MINOR CHILD "M.M", MINOR CHILD "O.N.", ANNA REXACH-CONSTANTINE, MERVYN CONSTANTINE, NEAL DAVIS, EDNA SANTIAGO, GUIDRYCIA WELLS, O'SHAY WELLS, AARON G. MAYNARD, VERNE MCSWEEN, , ROCHELLE GOMEZ, JOAN MATHURIN, MYRNA MATHURIN, ANN MARIE JOHN-BAPTISTE, WARRINGTON CHAPMAN and LEOBA JOHN-BAPTISTE-PELLE, (the "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class"), bring this Class Action Complaint (the "Action") against Defendants LIMETREE BAY VENTURES, LLC, LIMETREE BAY REFINING, LLC, LIMETREE BAY TERMINALS, LLC, ARCLIGHT CAPITAL PARTNERS, LLC, FREEPOINT COMMODITIES, LLC, EIG GLOBAL ENERGY PARTNERS, LLC, BP PRODUCTS NORTH AMERICA, INC., and JOHN DOES 1-100 ("Limetree" or the "Defendants") for violations of law. The allegations herein are made based on each Plaintiff's personal knowledge as to the allegations pertaining to himself, and upon information, belief, and investigation by counsel as to all other matters.

## I.    INTRODUCTION

1.      The island of St. Croix, home to over 50,000 people, is the largest of the four major islands that make up the United States Virgin Islands, one of the most beautiful places in the world. St. Croix describes itself as being part of

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

"America's Paradise," a place of an "eternal summer caressed by cooling tradewinds."[1]

2.    The beauty of the island makes it a popular tourist destination spot, which is what helps to sustain the Virgin Islands economy. St. Croix also has a thriving agricultural industry that produces wholesome and healthy foods for the entire Virgin Islands.

3.    The Defendants, who own a "world class refinery"[2] called the Limetree Bay Refinery (hereinafter the "Refinery"), threaten the integrity of the citizens who live in St. Croix as well as the island's tourist economy due to the Refinery's wrongful emission and discharge of toxic substances, gases and odors including (but not limited to) oil, hydrogen sulfide, sulfur dioxide, petroleum hydrocarbons, and other chemicals and particulates (hereinafter the "Toxins"). The location of the Refinery on St. Croix can be seen in the image below.



4.    Previously, the Refinery had been closed due, in part, to other environmental disasters which threatened the island's citizens and its local

---

[1] visitstcroix.com, (last accessed, May 26, 2021).
[2] limetreebayenergy.com, (last accessed May 26, 2021).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

economy; however, the Refinery was reopened in February of 2021.[3] It took less than a month for the first environmental disaster to occur since the Refinery's reopening – and numerous incidents have occurred since then, including the Refinery "shower[ing] oil on local residents twice, spew[ing] sulfuric gases into the surrounding area, and releas[ing] hydrocarbons into the air."[4] In May of 2021, the Environmental Protection Agency ("EPA") shut the refinery down, claiming that the Refinery's continued operation was an "imminent" threat to the health of people on the island.[5]

5.       The implications from these incidents have been swift and dire.

6.       Plaintiffs and the members of the putative Class have been subjected to unreasonable odors, gases, vapors, and fumes which contain the aforementioned Toxins due to the Defendants' unlawful operation of the Refinery. Particulate matter has been released into the air containing Toxins, and visible droplets of oil have literally fallen from the sky onto the island and the people who reside there.

7.       According to the EPA, "[t]his … community has suffered through at least four incidents that have occurred at the facility, and each had an immediate and significant impact on people and their property."[6] Specifically, these incidents occurred on February 4, 2021, April 23, 2021, May 5, 2021, and May 12, 2021 (hereinafter the "Incidents") – and the Incidents caused harm to the Plaintiffs and the members of the putative Class.

8.       As such, Plaintiffs, individually and on behalf of others similarly situated, bring this Action in order to seek adequate redress for the harm caused by the Defendant's Refinery and the operation of that Refinery. Plaintiffs and

---

[3] https://www.washingtonpost.com/climate-environment/2021/05/14/limetree-bay-refinery/, (last accessed May 26, 2021), at Ex. A.
[4] *Id.*
[5] *Id.*
[6] *Id.*

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

members of the putative Class seek injunctive relief, damages, and reasonable attorneys fees due to the Defendant's violations of law.

## II.    JURISDICTION AND VENUE

9.    This Court has diversity jurisdiction pursuant to the Class Action Fairness Act, codified at 28 U.S.C. §§ 1332(d) and 1453, because the putative class consists of at least 100 Class Members; the citizenship of at least one Class Member is different from that of Defendants; and the amount in controversy exceeds $5 million, exclusive of interest and costs.

10.    This Court has federal question jurisdiction over Plaintiffs' claims arising under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), pursuant to 28 U.S.C. § 1331, because those claims arise under a federal statute. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because those claims arise out of a common nucleus of fact with the federal claims alleged herein.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District and a substantial part of property that is the subject of this action is situated in this District. Venue is also proper pursuant to 42 U.S.C. § 9613(b), because the unlawful releases and damages occurred within this District.

## III.    PARTIES

12.    **Plaintiffs.** Plaintiffs are citizens of St. Croix, United States Virgin Islands who live and/or work in communities adjacent to or located downwind from the Refinery, were harmed by the Defendants' Refinery and its operations, and suffered damages as a result. Each Plaintiff resides at or near the points identified in orange or red below:

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*



13.    Plaintiff Clifford Boynes is a resident of St. Croix, United States Virgin Islands. Mr. Boynes is a former Hess Oil Refinery worker. After the releases, oil droplets were found on his vehicle and on the windows and roof of his house. Limetree Bay conducted an inspection of his house and found droplets.  In order for Limetree Bay to conduct cleanup of his cistern, he had to sign a release. When he tried to retrieve the release, he was told it was too late. He suffers from nasal allergies, which were exacerbated by the strong smell of sulfur and gas he observed between late April and Mid-May 2021.  He recognized the odors from his work at the refinery. He also experienced burning in his nose and more sneezing than usual.

14.    Plaintiff Chris Christian is a resident of St. Croix, United States Virgin Islands. Mr. Christian is a former Hess Oil Refinery worker. When the incidents alleged herein occurred, he recognized the smell of rotten eggs and sulfur. Thereafter, he had difficulty sleeping and experienced great discomfort from the fumes to the point that he evacuated his family to Christiansted.  He is also asthmatic. The real property owned by Mr. Christian and which was directly impacted by the Release is located at 33A Prince Street, Fredericksted.

15.    Plaintiff Margaret Thompson is a resident of St. Croix, United States Virgin Islands. At the time of the events alleged herein, Ms. Thompson smelled a

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

heavy scent of gas for several days. The fumes penetrated the windows to her home and kept her up at night. She suffered from burning eyes and a sore and scratchy throat for about two weeks between April and May 2021. She also observed oil droplets around the exterior of her home. Limetree Bay inspected and promised to clean up her property. She was told she would have to sign a release, but she has not heard from Limetree Bay since then.

16.    Plaintiff Delia Almestica is a resident of St. Croix, United States Virgin Islands. In early March 2021, Ms. Almestica found droplets on her vehicle and the walls of her home. A sheen appeared on the surface of her cistern water. When she bathed, the oil residue remained on her skin. She smelled fumes of gas and oil and had difficulty breathing. She is asthmatic. Ms. Almestica owns a home business where she grows and sells fruit and vegetable plants. Following the incidents, her plants began to die off rapidly. She also has a sewing business that she operates out of her home. Her sewing equipment and materials were covered in dark brown soot from the heavy smoke released during the flares.

17.    Plaintiff Carlos Christian is a resident of St. Croix, United States Virgin Islands. Mr. Christian works for the National Guard and was among the group of Hazmat first responders that conducted testing outside the perimeter of Limetree Facility following the flaring incident. Personally, he saw visible droplets of oil on his vehicle and around his home in Fredriksted. His property was inspected by Limetree Bay for oil droplets. He was told they would return to clean his property, but no one from Limetree returned.

18.    Plaintiff Minor Child "J.M.M.", by and through his mother Anna Rexach-Constantine, is a resident of St. Croix, United States Virgin Islands. Minor Child J.M.M is homeschooled. He suffered burning eyes, watery eyes and runny nose, as well as stomach aches, diarrhea and headaches. JM.M. resides at 25D

Stony Ground, Frederiksted, St. Croix, and the aforementioned ailments were a direct result of physical impacts to the residence caused by the Defendants' Refinery and its operations.

19.    Plaintiff Minor Child "V.M.", by and through his mother Anna Rexach-Constantine, is a resident of St. Croix, United States Virgin Islands. Minor Child V.M. is homeschooled. He suffered from headaches, burning eyes, and frequent nose bleeds to the point of waking up with his pillow full of blood. V.M. resides at 25D Stony Ground, Frederiksted, St. Croix, and the aforementioned ailments were a direct result of physical impacts to the residence caused by the Defendants' Refinery and its operations..

20.    Plaintiff Minor Child "Z.R.C.", by and through his mother Anna Rexach-Constantine, is a resident of St. Croix, United States Virgin Islands. Minor Child Z.R.C. experienced burning eyes, watery eyes and runny nose, stomach aches, headaches and diarrhea. Z.R.C. resides at 25D Stony Ground, Frederiksted, St. Croix, and the aforementioned ailments were a direct result of physical impacts to the residence caused by the Defendants' Refinery and its operations.

21.    Plaintiff Minor Child "M.M", by and through his mother Anna Rexach-Constantine, is a resident of St. Croix, United States Virgin Islands. Minor Child M.M. is homeschooled. He experienced swollen, burning eyes, watery eyes and runny nose. He also experienced stomach aches, diarrhea and headaches. Though he has a history of asthma, he had never had an attack since becoming a teenager. However, he has experienced wheezing since the incidents alleged herein. M.M. resides at 25D Stony Ground, Frederiksted, St. Croix, and the aforementioned ailments were a direct result of physical impacts to the residence caused by the Defendants' Refinery and its operations.

22.    Anna Rexach-Constantine is a resident of St. Croix, United States

Virgin Islands and the mother of minors J.M.M., V.M., Z.R.C., and M.M.  Ms.
Rexach-Constantine resides at 25D Stony Ground, Frederiksted with her children
and husband where she keeps her vehicle. Following the releases, Ms. Rexach-
Constantine observed oily smears on the windshield of her vehicle when she
attempted to clean it. The windshield had to be cleaned with window cleaner.


23.     Plaintiff Minor Child "O.N.", by and through his mother Guidrycia
Wells, is a resident of St. Croix, United States Virgin Islands. Plaintiff O.N. is a
newborn baby. After exposure to the heavy gas fumes released by Defendants'
conduct at his home, his mother took him to the clinic out of concern that the
fumes impacted the child. She was told there was nothing that could be done since
he was a newborn. The aforementioned ailments were a direct result of physical
impacts to the residence caused by the Defendants' Refinery and its operations.

24.     Plaintiff Mervyn Constantine is a resident of St. Croix, United States
Virgin Islands. Mr. Constantine lives and works in Fredriksted. During the
incidents alleged herein, he observed a strong odor but paid no attention until he
began to experience headaches and difficulty breathing. He is asthmatic and had to
use his Albuterol pump more often than usual.  Oil droplets were observed in the
vicinity of his home at 25D Stony Ground, Frederiksted and on his vehicle.

25.     Plaintiff Neal Davis is a resident of St. Croix, United States Virgin
Islands. Mr. Davis was hospitalized for symptoms of dizziness, vomiting and
weakness after experiencing strong odors at his home. Prior to that, in or around,
April, his left eye started burning.  The burning exacerbated prior issues with his
eyes. In May, the pain got significantly worse. He remained hospitalized due to
kidney stones his doctors found and other complications. Mr. Davis' personal
property that was damaged by the release of toxins include home furnishings,

personal clothing and the cistern water used at his residence.

26.    Plaintiff Edna Santiago is a resident of St. Croix, United States Virgin Islands. She observed the strong odor of gasoline resulting from Defendants' operations of the Refinery. Significant amounts of oil droplets were found on the exterior of her home, on her windows and curtains.  As a result, she suffered headaches, sore throat, itchy eyes  and nausea.  Ms. Santiago rents a home located at No. 107 Cane Bay, Frederiksted, St. Croix and owned several fruit trees, cars, home furnishings and vehicles damaged by Defendants' release of toxins.

27.    Plaintiff Guidrycia Wells is a resident of St. Croix, United States Virgin Islands. Ms. Wells returned from the hospital on May 4, 2021 after giving birth to Plaintiff Minor Child O.N. Within days she started to smell strong orders of gasoline, sulfur and rotten eggs. She had difficulty sleeping as a result of the odors.  She had to close the windows to her house but, could still smell the heavy odor. She experienced severe headaches and nausea. Ms. Wells rents an apartment located at 19 B Lorraine Village, Fredriksted, St. Croix, and the aforementioned ailments were a direct result of physical impacts to the residence caused by the Defendants' Refinery and its operations.   The contents of the apartment were damaged by Defendants' release of toxins.

28.    Plaintiff O'Shay Wells is a resident of St. Croix, United States Virgin Islands. During the string of incidents alleged herein, Mr. Wells woke up feeling weak. He went to work and started vomiting. His eyes turned yellow. Mr. Wells shares a rental apartment located at 19 B Lorraine Village, Fredriksted, St. Croix with his sister Guidycia Wells. Mr. Wells found oil residue on his vehicle which had to be washed thoroughly to remove the oil.

29.    Plaintiff Aaron G. Maynard is a resident of St. Croix, United States Virgin Islands. At the time of the events alleged herein, Mr. Maynard observed a

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

heavy metallic smell of gasoline in early May. He experienced dizziness and stomach aches that lasted until the following day. On the weekend he started feeling the effects of the scent more deeply and had to lie down. There were also droplets of oil on his mature fruit trees and inside his house since his windows could not completely close.  Mr. Maynard resides at No. 72 B Grove Place, Frederiksted, St. Croix.  The contents of the home,  his fruit trees and cistern water were damaged by the Defendant's release of toxins.

30.    Plaintiff Verne McSween is a resident of St. Croix, United States Virgin Islands. Mr. McSween  works at the Lionel A. Jackson National Guard Armory. As a result of the incidents alleged herein, Mr. McSween began experiencing a strong scent of sulfur and rotten eggs.  He has suffered stomach aches and diarrhea. Mr. McSween observed oily substances on his vehicles that could only be removed with a degreaser, including one that he keeps at his parents' home located at 222 Mount pleasant, Fredericksted, St. Croix.   .

31.    Plaintiff Rochelle Gomez is a resident of St. Croix, United States Virgin Islands. Ms. Gomez observed the strong smell of gasoline at the time the incidents alleged herein occurred. She recalls the weather being very windy and the fumes becoming stronger with the wind. She tried to close the windows, which did not help much. She could not sleep at night. She has experienced sore throat, burning nose, throat and eyes. She also noticed that her plants have stopped growing or are dying off. Ms. Gomez owns real property located at 1BA Two Brothers, Frederiksted, St. Croix. The property contains two residential structures and several fruit trees.

32.    Plaintiff Joan Mathurin is a resident of St. Croix, United States Virgin Islands.  Ms. Mathurin observed a strong odor of gas and thought gas was escaping from somewhere in her house. She felt nauseous to the point that she believed she

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

was dying.  Her eyes burned.  She did not get any relief until she went to the northern part of her property. Ms. Mathurin owns real property located at No. 44 Upper Love Frederiksted, St. Croix, which was damaged along with its contents and Ms. Mathrin's personal belongings which carried a heavy odor of gas.

33.    Plaintiff Myrna Mathurin is a resident of St. Croix, United States Virgin Islands.  Ms. M. Mathurin resides with her mother, Plaintiff Joan Mathurin. She observed the strong sent of gas and called the gas company to check for leaks inside the home. None were found.  She experienced stomach aches, red eyes and soreness in her throat.  Her vehicle and personal belongings were damaged by the release of toxins.

34.    Plaintiff Ann Marie John-Baptiste is a resident of St. Croix, United States Virgin Islands.  Ms. John-Baptiste began to observe strong odors of gas sometime  in April and early March.  The scent was the strongest in her bedroom and prevented her from sleeping comfortably.  She complained to her daughter that she could not breathe, was feeling dizzy and having blurred vision.  She was ultimately taken by ambulance to the Juan F. Luis Hospital where she stayed for about a week.  She received  oxygen and a blood transfusion.  Lime tree inspected her property and found evidence of petroleum droplets in the water spouts leading to the cistern.  No clean up was done. Ms John-Baptiste owns real property located at No. 763 William's Delight, Frederiksted, St. Croix which was damaged along with its contents by the release of toxins.

35.    Plaintiff Warrington Chapman is a resident of St. Croix, United States Virgin Islands.  Mr. Chapman observed strong odors of gas and sulfur for several days.  He suffered  from nausea, difficulty breathing and strange headaches, which he rarely gets. He observed oily residue on the fruits in his garden which he believed to be caused by oil particles. He own the real property located at No. 23

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

White Lady, Frederiksted, St. Croix which was damaged by the release of toxins and had to be evacuated.

36.    Plaintiff Loeba John-Baptiste-Pelle is a resident of St. Croix, United States Virgin Islands.  Ms John-Baptiste-Pelle owns real property located at No. 961 William's Delight, Frederiksted, St. Croix.  Unsolicited, Lime Tree Bay visited her home to conduct inspections when she was not at home.  Since that time no one from Lime Tree followed up.

37.    **Defendants.** Defendants LIMETREE BAY VENTURES, LLC, LIMETREE BAY REFINING, LLC, LIMETREE BAY TERMINALS, LLC, ARCLIGHT CAPITAL PARTNERS, LLC, FREEPOINT COMMODITIES, LLC, EIG GLOBAL ENERGY PARTNERS, LLC, BP PRODUCTS NORTH AMERICA, INC., and JOHN DOES 1-100 operate the aforementioned Limetree Bay Refinery which has caused harm to the Plaintiffs and the members of the putative Class.

38.    Defendant Limetree Bay Ventures, LLC is an energy facility which consists of the Limetree Bay Refinery and the Limetree Bay Terminal. This Defendant is a Delaware limited liability company with its headquarters located in the United States Virgin Islands. This Defendant avails itself to this Court by way of the fact that it does business in the United States Virgin Islands.

39.    Defendant Limetree Bay Refining, LLC is the entity responsible for operating the Refinery. This Defendant is a Virgin Islands limited liability company with its headquarters located in the United States Virgin Islands. This Defendant is owned by Arclight Capital Partners, LLC, a Delaware limited liability company, and Freepoint Commodities, LLC, a Delaware limited liability company.

40.    Defendant Limetree Bay Terminals, LLC is a joint venture responsible for operating the Limetree Bay Terminal. This Defendant is a Virgin

Island limited liability company with its headquarters located in the United States Virgin Islands. Limetree Bay Terminals, LLC is owned by Arclight Capital Partners, LLC, a Delaware limited liability company, and Freepoint Commodities, LLC, a Delaware limited liability company.

41.    Defendant Arclight Capital Partners, LLC ("Arclight") is a member of the joint venture that owns and operates the Limetree Bay facility. Arclight shares this joint venture with Defendant Freepoint Commodities, LLC. Arclight is a Delaware limited liability company with its headquarters located in Massachusetts. Arclight avails itself to this Court by way of the fact that it does business in the United States Virgin Islands.

42.    Defendant Freepoint Commodities, LLC ("Freepoint") is a member of the joint venture that owns and operates the Limetree Bay facility. Freepoint shares this joint venture with Defendant Arclight Capital Partners, LLC. Freepoint is a Delaware limited liability company with its headquarters located in Connecticut. Freepoint avails itself to this Court by way of the fact that it does business in the United States Virgin Islands.

43.    Defendant EIG Global Energy Partners, LLC ("EIG") is a private investments private equity company that secured a portion of the financing that Defendant Limetree Bay Ventures, LLC obtained in order to fund the restarting of the Limetree Bay Refinery. EIG is a Delaware limited liability company and maintains its headquarters in Washington, District of Columbia. EIG avails itself to this Court by way of the fact that it does business in the United States Virgin Islands.

44.    Defendant BP Products North America, Inc. ("BP Products") is a company that has involvement in the operation of the Refinery, including long-term tolling, supply and offtake agreements with Defendant Limetree Bay

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

Refinery, LLC. BP Products is incorporated in Delaware and is headquartered in Texas. BP Products avails itself to this Court by way of the fact that it does business in the United States Virgin Islands.

45.    The ownership and organizational structure among the foregoing Defendants is set forth below:



46.    Defendants John Does 1-100 are individuals or business or corporate entities incorporated in or doing business in St. Croix, United States Virgin Islands, whose true capacities are unknown to Plaintiffs, who therefore sue such defendants by such fictitious names, and who will amend the complaint in this Action to show the true names and capacities of each such Doe defendant when ascertained. Each such Defendant Doe is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Action.

## IV.    FACTUAL ALLEGATIONS

### A. Refineries

47.    Refineries "separate crude oil into a wide array of petroleum products through a series of physical and chemical separation techniques. These techniques

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

include fractionation, cracking, hydrotreating, combination/blending processes, and manufacturing and transport."[7]

48.    According to the EPA, "[r]efineries in general emit a whole host of pollutants, ranging from nitrous oxides ("NOX"), sulfur dioxide ("SO2"), and carbon monoxide ("CO") to volatile organic compounds ("VOC"), hydrogen sulfide ("H2S"), and particulate matter "(PM")."[8] Additionally, the EPA has stated that "[e]missions … may include carbon particles (soot), unburned hydrocarbons, CO, partially burned and altered hydrocarbons, NOX and, if sulfur containing material such as hydrogen sulfide is flared, SO2."[9]

**B. The Limetree Bay Refinery**

49.    Prior to the reopening of the Refinery, it was called HOVENSA[10] and was one of the world's largest oil refineries.

50.    According to the EPA, "[t]he HOVENSA facility ("the facility") is located at Limetree Bay, St. Croix, U.S. Virgin Islands. It is a petroleum refinery covering 1,500 acres in what is known as South Industrial Complex, on the south central coast of St. Croix. Operations at the facility began in 1965 under HOVIC. On October 30, 1998 Amerada Hess Corporation, the parent company of HOVIC, and Petroleos de Venezuela, S.A. (PDVSA) formed a new corporation named HOVENSA LLC, which acquired ownership and operational control of the HOVIC facility. The facility's maximum design capacity was 545,000 barrels (1 barrel = 42 gallons) of crude oil per day. Over 60 different types of crude oil had been processed at the facility. By means of distillation and other refining

---

[7] *In the matter of Limetree Bay Terminals, LLC and Limetree Bay Refining, LLC*, CAA-02-2021-1003 (E.P.A., Region 2)(May 14, 2021)("*In re Limetree*").

[8] *Id,* at § 19.

[9] *Id,* at § 23.

[10] https://www.epa.gov/hwcorrectiveactionsites/hazardous-waste-cleanup-hovensa-llc-christiansted-us-virgin-islands, (last accessed May 26, 2021).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

processes, crude oil is separated into various components. Light ends (fuel gas) are sent to the facility's fuel system; naphtha, jet fuel, kerosene and No. 2 oil are further processed to remove sulfur."[11]

51.    In 2012, HOVENSA was closed down in 2012 after causing environmental disasters akin to those alleged herein, specifically violating the Clean Air Act.[12]

52.    The ventures which owned and ran the HOVENSA facility at that time decided to declare bankruptcy[13] and subsequently shut the plant down rather than capitulate to the $700 million in new pollution controls dictated by the EPA and the Department of Justice ("DOJ").[14]

**C. The Restart of the Limetree Bay Refinery**

53.    In 2018, Defendants gained custody over the Limetree Bay facility – both the Refinery as well as the Limetree Bay Terminal. Among other federal and state environmental regulations and statutes, the Refinery is subject to the Clean Air Act and the Virgin Islands State Implementation Plan promulgated thereunder. The EPA issued a number of permits to HOVENSA pursuant to Title V of the Clean Air Act, which  were transferred to the Refinery on November 5, 2018.

54.    The EPA has determined that the Refinery has emitted, and likely will continue to emit, pollutants including benzene, cumene, methyl isobutyl ketone,

---

[11] *Id.*

[12] https://www.justice.gov/opa/pr/nation-s-second-largest-refinery-pay-700-million-upgrade-pollution-controls-us-virgin-islands, (last accessed May 26, 2021).

[13] https://www.reuters.com/article/bankruptcy-hovensa/hovensa-faces-bankruptcy-owes-1-86-billion-to-owners-idUSL1N11N20A20150917, (last accessed May 26, 2021).

[14] https://www.justice.gov/opa/pr/nation-s-second-largest-refinery-pay-700-million-upgrade-pollution-controls-us-virgin-islands, (last accessed May 26, 2021).

methyl tert-butyl ether, naphthalene, toluene, and xylene (mixed isomers),[15] each of which is listed as a "hazardous air pollutant" under the Clean Air Act.

55.    Defendants operated the Refinery as an oil storage facility until it reopened its refining operations in early 2021. During that time, Defendants failed to adequately monitor and protect against the environmental harms caused by its storage operations—for example, on August 22, 2020, one of the Refinery's stormwater pumps failed as a result of heavy rainfall and oil-polluted water overflowed into a containment pond and discharged into a nearby harbor.

56.    In December 2020, the EPA issued an additional Clean Air Act pollution permit (the "Plantwide Applicability Limit" or "PAL" permit) to the Refinery, which would have allowed the Refinery even greater leeway in its operations, the very operations by which HOVENSA caused substantial environmental harm to St. Croix and its residents just over a decade ago.

57.    Pursuant to the PAL permit, the Refinery was required to install the air monitoring equipment that HOVENSA had ducked before filing for bankruptcy; however, the Refinery appealed those requirements, among others, arguing that the requirements were too strict and unneeded, and upon information and belief, never installed the air monitoring equipment on which issuance of the PAL permit was conditioned.

58.    On February 1, 2021, the Limetree Bay facility restarted refinery operations for the first time since its closure in 2012 due to the environmental havoc that HOVENSA had caused to St. Croix, its people, and the surrounding area.

59.    According to a statement by the Defendants, "Limetree Bay Refining, LLC, restarted [refinery] operations in February 2021, and is capable of processing

---

[15]    https://enviro.epa.gov/enviro/multisys2_v2.get_list?facility_uin=110000307864 (last accessed June 3, 2021).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

around 200,000 barrels per day. Key restart work at the site began in 2018, including the 62,000 barrels per day modern, delayed Coker unit, extensive desulfurization capacity, and a reformer unit to produce clean, low-sulfur transportation fuels that will meet International Marine Organization ("IMO") standards required under international law in 2020. The restart project provided much needed economic development in the U.S.V.I. and created more than 4,000 construction jobs at its peak and more than 600 full-time jobs currently."[16]

60.    Within four days, however, the first of four Toxic Incidents would occur – causing the harm and the damage alleged herein.

**D. The Toxic Incidents Caused by the Limetree Bay Refinery**

61.    The aforementioned Toxic Incidents occurred on February 4, 2021, in late-April, 2021, on May 5, 2021, and on May 12, 2021 – each of which caused harm to the Plaintiffs and the members of the putative Class.

**i.    Toxic Incident One**

62.    On February 4, 2021, Toxic Incident One occurred.

63.    According to the EPA, "a mixture of oil and water, in the form of an oily mist, was emitted as air emissions from Flare #8 at the Facility (the "Feb. 4 Incident"). These emissions included liquid droplets of oil and other toxins … Limetree was aware of the impact this event had on the surrounding community and paid for various cleaning and decontamination work and provided bottled water to the community. In a March 3, 2021 press release, Limetree stated, "Limetree's environmental team was able to field verify the area impacted by the release, which was determined to be the Clifton Hill community."[17]

---

[16] https://www.limetreebayenergy.com/about-us/company-history/ (last accessed June 4, 2021).
[17] *In re Limetree*, ¶¶ 34, 37.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

64.     Additionally, the EPA stated, "[a]s of March 16, 2021, Limetree had reported to EPA that the Feb. 4 Incident resulted in 193 residences with potential contamination and 148 roofs and 245 cars that required cleaning. Samples were taken from 163 cisterns, and at the time the results of 135 of those samples had been received. 70 of those 135 cisterns were identified as contaminated… Many in the community nearby the Facility rely on cisterns for their household water use. A March 21, 2021 news article explained that, "Ever since the refinery contaminated St. Croix's groundwater [under HOVENSA's prior operation], cisterns have become a necessity on the island—catching rain to provide water for residents to drink, wash with or . . . irrigate their vegetable gardens."[18]

65.     The Defendants ultimately admitted to the fact that the Incident occurred, "during an April 30, 2021, site visit to the Facility by staff from EPA…, Limetree representatives said that Limetree believes that the release was a mist with heavy oil in it."[19]

66.     As a result of Incident One, the Plaintiffs and members of the putative Class suffered personal harm and harm to their property as a result of the Defendants' conduct.

67.     According to the EPA, "[i]n early April, the Refinery stopped operations for a period of time due to undisclosed operational issues. LBR stated in a letter to EPA that the "refinery is shut down while we make operational adjustments."[20]

### ii.    Toxic Incident Two

68.     In late-April of 2021, Toxic Incident Two occurred.

---

[18] *Id*, at ¶ 38-39.
[19] *Id*, at ¶ 42.
[20] *Id*, at ¶ 45.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

69.    From April 19-23, 2021, specifically, "Limetree reported …
exceedences for the 162 parts per million ("ppm") emission standard for H2S
concentrations … at the facility."[21]

70.    The EPA stated, "H2S is a flammable, colorless gas that smells like
rotten eggs. People can usually smell H2S at low concentrations in air when H2S
concentrations are in the range of from 0.0005 to 0.3 ppm. Exposure to low
concentrations of H2S may cause irritation to the eyes, nose, or throat. It may also
cause difficulty in breathing for some asthmatics. Respiratory distress or arrest has
been observed in people exposed to very high concentrations of H2S."[22]

71.    From April 19-22, 2021, "hydrogen sulfide concentrations measured
at the Flare #8 flare header rose to orders of magnitude above the limit of 162
ppm… High hydrogen sulfide readings on each of those four days, measured
between 5 AM on April 19 and 5 PM on April 22, rose as high as 31,546.5,
39,475.7, 2,272.4, and 4,046.5 ppm, respectively[.]"[23]

72.    Additionally, "Limetree continued to measure high levels of hydrogen
sulfide in excess of the 162 ppm limit at the flare header for Flare #8 at the Facility
during the evening of April 22 and into April 23, 2021. Hydrogen sulfide readings
rose throughout the evening on April 22, and peaked at a three-hour average of
91,649.0 ppm around 11 AM on April 23 – over 565 times higher than the
concentration limit of 162 ppm."[24]

73.    According to the EPA, "[o]n April 24, 2021, the Virgin Islands
Department of Health ("VIDOH") issued a press release alerting St. Croix
residents to potential health effects from the Facility's Refinery emissions. It noted

---

[21] *In re Limetree,* at ¶ 46.

[22] *Id*, at ¶ 47.

[23] *Id*, at ¶ 49.

[24] *Id*, at ¶ 51.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

Limetree's confirmation of elevated hydrogen sulfide concentrations from Flare #8 and said that a "foul, gaseous smell, which can smell similar to rotten eggs, has permeated throughout the Frederiksted area for the past few days." It explained the potential health effects of breathing hydrogen sulfide, and encouraged residents to report symptoms such as headaches, nausea, and symptoms of a respiratory nature to their healthcare providers.

74.    On April 24, 2021, Limetree issued a press release denying any release of hydrogen sulfide occurred from April 22 to 23, 2021. Limetree claimed that the incident involved only an unusually high level of sulfur dioxide emissions, and that the odor of sulfur dioxide (similar to a struck match) can be smelled in amounts far below the level normally considered dangerous to health.

75.    During an April 30, 2021, site visit to the Facility by staff from EPA … Limetree staff explained that the April 23, 2021 incident was related to the main sulfur recovery unit #4's fire eye detecting a lack of flame, and thus diverting the acid gas to the flare rather than treating it. The flare itself had a flame burning at the time that would have burned the hydrogen sulfide, producing sulfur dioxide."[25]

76.    According to the EPA, "Limetree also does not conduct any fenceline monitoring for SO2 or H2S; it only conducts fenceline monitoring for benzene. Limetree's predecessor, HOVENSA, operated five SO2 monitors near the perimeter of the Facility, but those monitors have not been operated since 2013, after HOVENSA stopped operating the Facility's Refinery. Limetree has not restarted those SO2 monitors. On April 30, 2021, EPA issued a Notice of Violation to Limetree for its failure to operate the five SO2 monitors."[26]

### iii.    Toxic Incident Three

77.    On May 5, 2021, Toxic Incident Three occurred.

---

[25] *Id*, at ¶ 58-60.
[26] *Id*, at ¶ 66.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

78.    According to the EPA, "On May 5, 2021, community members began calling EPA to report that an odor was emitting from the Facility. They described the odor as "sulfur," "gassy," "burnt eggs," and "rotten." On May 6, 2021, community members continued to report odor emitting from the Facility. At 7:08 PM est, a citizen caller reported that the odor was continuing and described the fumes as "noxious." The caller also stated that the "materials in the air were causing health problems" for community members, including "head ache, sore throat, ear ache, nausea, and lips and tongue tingling… Initially, on May 5, 2021, Limetree issued a statement on Facebook denying that there were any problems at the Facility… Limetree stated in its Facebook post that Facility personnel had conducted a preliminary investigation, and Limetree had concluded that "units are operating normally, and there is no activity that would result in an odor.""[27]

79.    Subsequently, Limetree admitted to environmental violations on the very same day that they misled the public, May 5, 2021.

80.    Per the EPA, "On May 5, 2021, Limetree environmental personnel reported to DPNR and EPA that the Facility had exceeded the H2S limit at Flare #8 at approximately 9 PM est on May 5. At the time the email notification was sent to DPNR and EPA at 10:12 PM est, Limetree environmental personnel stated that H2S was back below the limit."[28]

81.    On the next day, May 6, 2021, Defendants released the following statement: "Limetree Bay has become aware of an odor affecting areas west of the facility. We are conducting maintenance activity at the Coker unit, which has resulted in light hydrocarbon odors. We will continue to monitor the situation, but

_____

[27] *Id*, at ¶¶ 69, 71.
[28] *Id*, at ¶ 72.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

there is the potential for additional odors while maintenance continues. We apologize for any impacts this may have caused the community. Thank you."[29]

82.    On May 6, 2021, due to the noxious odor released by the Refinery, the U.S. Virgin Islands' Bureau of Motor Vehicles closed due to the presence of a "gas like odor."[30] On the same day, the Virgin Islands' Department of Education closed three schools.[31]

83.    On May 7, 2021, Virgin Islands governor Albert Bryan "activated the … National Guard… to address continuing reports of odor and heightened concern from the community."[32] The government "advised residents with respiratory ailments to avoid going outside or to temporary relocate to areas of the island that were less affected by the odors."[33]

84.    On that same day, the Defendants reported to the EPA yet another spike of H2S was released into the environment as a result of the Refinery and Defendants' operations thereof.[34]

### iv.    Toxic Incident Four

85.    On May 12, 2021, Toxic Incident Four occurred.

86.    According to the EPA, "[o]n May 12, 2021 at approximately 5:30 PM, Limetree reported to EPA that around 3:15 PM EST a flaring incident occurred at the Refinery when the pressure in the coker drum rose, causing fire or flames. At the time, Limetree was still unsure what specifically caused the flaring incident. Limetree reported that during its investigation of the fire, Limetree discovered that

---

[29] *Id*, at ¶ 73.
[30] *Id*, at ¶ 76.
[31] *Id*, at ¶ 75.
[32] *Id*, at ¶ 77.
[33] *Id*.
[34] *Id*, at ¶ 78.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

liquid droplets of oil were on the road west of the Facility."[35] "Liquid droplets of oil" were also reported on properties in the surrounding neighborhood.[36]

87.    Additionally, "[a]t 8:50 PM on May 12, 2021, Limetree staff told EPA staff by phone that Limetree was stopping production after such a "big" incident. This would not be a full shutdown of the Refinery, but Limetree would stop production. Limetree would run some units on circulation and the utilities/wastewater would still be in operation. The Limetree staff was not sure how long production would be suspended."[37]

### v.    EPA Intervention

88.    After the Toxic Incidents, the EPA had no choice but to intervene in what was taking place as a result of the Refinery and Defendants' operations thereof.

89.    On March 25, 2021, the EPA withdrew the PAL permit granted to the Refinery in December 2020, which had never gone into effect due to a number of appeals. Though the permit was withdrawn, the Refinery's operations were permitted to continue pursuant to the dozen other Clean Air Act permits issued to HOVENSA and subsequently transferred to the Refinery.

90.    During a visit to the Refinery in April by the EPA, "Limetree representatives stated that Limetree has a single Environmental Department, known as the Health, Safety, and Environmental ("HSE") Department, serving the entire Facility, including the Refinery and marine loading terminal operations. In addition to managing environmental compliance at the Facility, the HSE department also oversees safety and implementation of COVID-19-related

---

[35] *Id*, at ¶ 79.
[36] *Id*.
[37] *Id*, at ¶ 84.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

procedures. The entire HSE department consists of 5 employees. Limetree representatives noted they did have consultant support."[38]

91.    The EPA, in response to this revelation stated, "[a] Refinery of this size and complexity would be expected to have 10-20 full time onsite staff in its health, safety and environment department."[39]

92.    As such, the Defendants were not even adequately staffed to run a Refinery of this size – especially given the facility's history and proclivity to cause environmental disasters.

93.    On April 30, 2021, the EPA issued a Notice of Violation to Defendants for Defendants failure to operate five sulfur dioxide ("SO2") ambient air monitors as required by one of the Clean Air Act permits issued to the Refinery.

94.    As a result of the foregoing, the EPA (which decided to invoke emergency powers in order to do so) decided to shut the facility down temporarily – but the damage to the surrounding people, the island of St. Croix, and the property on the island was already done.[40]

### vi.    The Disproportionate Effects of Defendants' Conduct on Minority Communities

95.    Plaintiffs and members of the putative Class were disproportionately harmed as a result of the Defendants' conduct alleged herein.

96.    As the EPA has recognized repeatedly, "Limetree Bay is in a community predominantly made up of people of color and low-income populations

---

[38] *Id*, at ¶ 91.
[39] *Id*, at ¶ 92.
[40] Ex. A.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

who are already disproportionately affected by environmental burdens" and "[t]hese disproportionate burdens present environmental justice concerns."[41]

97.    Indeed, the EPA found that in the neighborhoods adjoining the Refinery 27% of residents live below the poverty line and 75% are people of color, and concluded that "in light of the burden already experienced by the nearby low income and minority populations, [the EPA] is requiring Limetree to resume an ambient air monitoring network that will measure $NO_2$, $SO_2$ and $PM_{2.5}$."[42]

98.    But Defendants balked at those requirements and refused to implement the necessary monitoring to protect these minority populations, as evidenced by the EPA's April 30 notice of violation to the Refinery for failing to install the monitors.[43]

99.    This is not the first time that Defendant Arclight has targeted and exploited vulnerable communities of color—according to data analyzed by the University of Massachusetts, Arclight has incurred millions in penalties for environmental violations, with minorities accounting for more than 35% of the impact of those violations.[44]

100.   This data shows that Arclight preys on communities of color, where environmental laws are underenforced, by refusing to implement the necessary protective and remedial measures in place to prevent harmful, toxic incidents—like those endured by Plaintiffs and Class Members—on the assumption that these

---

[41] https://www.epa.gov/newsreleases/epa-notifies-limetree-bay-clean-air-act-violations (last accessed June 3, 2021).

[42] https://dpnr.vi.gov/wp-content/uploads/2019/07/Final-Major-EAR-Limetree-Consolidation.pdf (last accessed June 4, 2021).

[43] https://www.epa.gov/newsreleases/epa-notifies-limetree-bay-clean-air-act-violations (last accessed June 4, 2021).

[44] https://grconnect.com/tox100/ry2018/index.php?search=yes&company1=535&chemfac=chemfac&advbasic=adv&sortp=city (last accessed June 3, 2021).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

vulnerable communities lack the resources to seek recourse for the harm caused by

Arclight's exploitation.

## V.    CLASS ACTION ALLEGATIONS

101.    Plaintiffs bring this action on behalf of themselves and, under Federal

Rules of Civil Procedure 23(a) and (b)(3), as representatives of a Class defined as

follows:

> All persons who owned property (real and/or personal), and/or
> operated a business, and/or worked or resided on St. Croix and who
> have been harmed by the Defendants' conduct alleged herein from the
> date on which the Refinery Defendants acquired the Refinery through
> the present.

102.    **Numerosity.** Members of the Class are so numerous that joinder is

impracticable. Plaintiffs do not know the exact size of the Class but believe that

there are at least tens of thousands of class members geographically dispersed

throughout the United States. As such, a class action is superior to other methods

of adjudication due to its capacity for efficiency and its preservation of judicial

economy, more specifically.

103.    **Typicality.** Plaintiffs' claims are typical of the claims of the members

of the Class. Plaintiffs and all members of the Class were damaged by the same

wrongful conduct of Defendants.

104.    Plaintiff will fairly and adequately protect and represent the interests

of the Class. The interests of Plaintiffs are coincident with, and not antagonistic to,

those of the Class. Accordingly, by proving their own claims, Plaintiffs will prove

other class members' claims as well.

105.    **Adequacy of Representation.** Plaintiffs are represented by counsel

who are experienced and competent in the prosecution of class action

chemical/toxin(s) contamination and/or antitrust litigation. Plaintiffs and their

counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiffs can and will fairly and adequately represent the interests of the Class and have no interests that are adverse to, conflict with, or are antagonistic to the interests of the Class.

106.    **Commonality.** There are questions of law and fact common to the Class, which questions relate to the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a result thereof, including, but not limited to:

- Whether Defendants' conduct alleged herein violates the laws as stated in the Cause of Action section, *Supra*, at VI;
- Whether Defendants owed a duty to Plaintiffs and the Class;
- Whether Defendants breached any duties owed to Plaintiffs and the Class;
- Whether Defendants were negligent in failing to properly maintain and operate the Limetree Bay Refinery, including without limitation, since its reopening;
- Whether Defendants were reckless in failing to properly maintain and operate the Limetree Bay Refinery, including without limitation, since its reopening;
- Whether the Defendants allowed a "release" or "threatened release" of a hazardous substance from the Refinery within the meaning of 42 U.S.C. § 9607(a)(4);
- Whether the Limetree Bay Refinery constituted a public nuisance;
- Whether the Limetree Bay Refinery constituted a private nuisance;
- Whether the contamination that resulted from the Toxic Incidents constituted a trespass to the Class Members;

- Whether Class Members are entitled to medical monitoring and early detection of disease;
- The appropriate nature of class-wide equitable relief; and,
- The appropriate measurement of restitution and/or measure of damages to Plaintiffs and the Class Members.

## VI.    CAUSES OF ACTION

### <u>COUNT I</u>

### NEGLIGENCE

107.    Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

108.    The actions of Defendants were negligent.

109.    Defendants owned and/or operated the Limetree Bay Refinery, and are responsible for its operations.

110.    Defendants failed to properly store, use, refine, and/or dispose of oil and other Toxins.

111.    Defendants failed to ensure that the refinery was safe to reopen when they knew or should have known it was not. Defendants also failed to hire and/or train personnel to conduct the reopening in a safe and effective manner.

112.    Defendants' conduct fell below the standard of care of a reasonable property owner and/or operator in similar circumstances.

113.    Defendants knew and/or should have known that its failure to properly store, use, refine, and/or dispose of oil and other chemicals, toxins, and particulates at the Limetree Bay Refinery would allow these dangerous materials to contaminate nearby neighborhoods and cause their residents personal injuries and property damages, including but not limited to diminution in value.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

114.  Defendants failed to warn and/or provide Plaintiffs', the Class and the public at large with adequate and timely notice of the hazards and their potential impacts.

115.  Defendants' negligence caused both physical personal injury and real and personal property damage that also resulted in emotional distress and anxiety to Plaintiffs and Class Members.

116.  As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs and Class Members have suffered damages.

## COUNT II

## NEGLIGENCE PER SE

117.  Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

118.  The actions of Defendants as set forth herein constitute negligence per se.

119.  Defendants have violated 28 V.I.C. §133 (Private Nuisance), 12 V.I.C. 201 (Virgin Islands Air Pollution Control Act), et seq., and 12 V.I.C. § 180, et. seq. (Virgin Islands Water Pollution Control Act).

120.  The purposes of both statutes are to protect the interests of Plaintiffs and the Class Members.

121.  As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs and Class Members have suffered damages.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

# COUNT III

## ABNORMALLY DANGEROUS CONDITION

122.    Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

123.    The actions of Defendants as set forth herein constitute maintaining an abnormally dangerous condition.

124.    The Limetree Bay Refinery is located just south of certain residential communities, including the community in which Plaintiffs reside or work. Further the natural resources of the U.S. Virgin Islands are particularly sensitive and precious.

125.    Defendants' use, storage, refining, and/or disposal of oil and other chemicals, toxins, and particulates was solely for Defendants' business purposes.

126.    Defendants knew and understood that there was a high risk that the oil and other chemicals, toxins, and particulates could contaminate nearby neighborhoods and cause their residents' personal injuries and property damage, including but not limited to the diminution of value.

127.    Defendants' use, storage, refining, and/or disposal of oil and other chemicals, toxins, and particulates at the Limetree Bay Refinery did in fact cause serious harm to Plaintiffs' and Class Members' person, chattel, and property, including both real and personal property.

128.    As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs and Class Members have suffered damages.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

## COUNT IV

## RESPONSE COSTS UNDER THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT

129.   Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

130.   The Refinery is a "facility" within the meaning of 42 U.S.C. § 9601(9).

131.   Each Defendant is (1) a current owner or operator of the Refinery; (2) a former owner or operator of the Refinery at the time the hazardous substances described herein were released; (3) a generator or other party who arranged for disposal of hazardous substances at the Refinery; or (4) a transporter of hazardous substances to the Refinery pursuant to 42 U.S.C. § 9607(a).

132.   Defendants have allowed a "release" or "threatened release" of a hazardous substance from the facility within the meaning of 42 U.S.C. § 9607(a)(4), including but not limited to sulfur dioxide, hydrogen sulfide, volatile organic compounds, oil and other hazardous substances.

133.   As a result of the release of hazardous substances from the Refinery, including sulfur dioxide, hydrogen sulfide, volatile organic compounds, oil and other hazardous substances, Plaintiffs and Class Members have incurred response costs consistent with the national contingency plan.

134.   Plaintiffs and Class Members have suffered harm as a result of these releases and are entitled to declaratory judgment, injunctive relief, and response costs incurred as a result thereof.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

## COUNT V

## PUBLIC NUISANCE

135.   Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

136.   The actions of Defendants constitute a public nuisance as defined under 14 V.I.C. 1461§.

137.  Specifically, Plaintiffs' and Class Members' homes, bodies, and emotional well-being have been damaged by Defendants' release of oil and other injurious chemicals, toxins, and particulates into their neighborhoods. However, the public at large has not endured such damages.

138.   Plaintiffs and the Class are entitled to damages as a result thereof.

139.   Moreover, Plaintiffs and the Class are further entitled to an injunction requiring Defendants to cease and desist all activities that result in the release of pollutants, and further to an injunction requiring Defendants to remove and remediate all pollutants that have been allowed to escape Defendants' premises.

## COUNT VI

## PRIVATE NUISANCE/TRESPASS

140.   Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

141.   Defendants' actions constitute a private nuisance and/or a trespass.

142.  Defendants' discharge of oil and other chemicals, toxins, and particulates, into Plaintiffs' and Class Members' residences and other properties, interfered with Plaintiffs' and Class Members' use and enjoyment of their homes and properties, damaged their homes and properties, and caused personal injuries.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

143. By so doing, Defendants have wrongfully and unreasonably interfered with Plaintiffs' and Class Members' private use and enjoyment of their homes and properties.

144. As a result, Plaintiffs and the Class have been damaged as alleged herein.

## COUNT VII

## STATUTORY PRIVATE NUISANCE

145. Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

146. Defendants' actions constitute a private nuisance in violation of 28 V.I.C. §331.

147. Defendants' discharge of oil and other chemicals, toxins, and particulates, into Plaintiffs' and Class Members' residences and other properties, interfered with Plaintiffs' and Class Members' use and enjoyment of their homes and properties, damaged their homes and properties, and caused personal injuries.

148. By so doing, Defendants have wrongfully and unreasonably interfered with Plaintiffs' and Class Members' private use and enjoyment of their homes and properties.

149. As a result, Plaintiffs and the Class have been damaged as alleged herein.

## COUNT VIII

## VIOLATION OF THE VIRGIN ISLANDS AIR POLLUTION CONTROL ACT

150. Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

151.  Defendants' actions constitute a violation of the Air Pollution Control Act, 12 V.I.C. § 201, et. seq.

152.  The Air Pollution Control Act's "declaration of purpose" indicates that it seeks "to promote health, safety and welfare" and "to prevent injury to human, plant and animal life, and property."

153.  The purpose of the Air Pollution Control Act is to protect residents of the Virgin Islands from emissions of pollutants.

154.  Plaintiffs and Class Members are among the class of persons the Air Pollution Control Act was meant to protect.

155.  Defendants' discharge of oil and other chemicals, toxins, and particulates, into Plaintiffs' and Class Members' residences violated the Air Pollution Control Act.

156.  As a result, Plaintiffs and the Class have been damaged as alleged herein.

## COUNT IX

## VIOLATION OF THE VIRGIN ISLANDS WATER POLLUTION CONTROL ACT

157.  Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

158.  Defendants' actions constitute a violation of the Water Pollution Control Act, 12 V.I.C. § 180, et. seq.

159.  The Water Pollution Control Act's "declaration of policy" indicates that it seeks "to promote health, safety and welfare" and "to protect, maintain and improve the quality thereof for public water supplies ... for domestic, recreational and other beneficial uses."

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

160.   The purpose of the Water Pollution Control Act is to protect residents of the Virgin Islands from the discharge of pollutants into "any waters of the United States Virgin Islands."

161.   Plaintiffs' and Class Members are among the class of persons the Water Pollution Control Act was meant to protect.

162.   Defendants' unpermitted discharge of oil and other chemicals, toxins, and particulates, into waters of the Virgin Islands, including the August 2020 overflow resulting from the failure of the Refiner's stormwater pump, as well as Plaintiffs' and Class Members' cisterns and wells, violated the Water Pollution Control Act.

163.   As a result, Plaintiffs and the Class have been damaged as alleged herein.

## COUNT X

## MEDICAL MONITORING

164.   Plaintiff's allegations are incorporated by reference as though fully set forth herein.

165.   Plaintiff and Class Members were significantly exposed to oil and other chemicals, toxins, and particulates proven hazardous to health because of Defendants' repeated failure to prevent the discharge of such substances since the February 2021 reopening of the Limetree Bay Refinery, including the Incidents referenced herein.

166.   The exposure to these dangerous substances is such that Plaintiff and the Class Members have been placed at an increased risk of contracting latent illness and disease, including but not limited to cancer, and as such, require

medical monitoring which Defendants are responsible for providing and paying for.

167. Monitoring and testing procedures for cancer and other illnesses associated with exposure to oil and other chemicals, toxins, and particulates exist which make the early detection and treatment of the disease possible and beneficial.

168. As a result, the Court should establish a Court-supervised and administered trust fund and medical monitoring regime to compensate Plaintiff and Class Members for their economic damages.

## COUNT XI

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

169. Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

170. The actions of Defendants negligently inflicted emotional distress on Plaintiffs and Class Members.

171. Defendants owed Plaintiffs and Class Members a duty of care to ensure that they did not suffer from serious emotional distress, which duty arose by operating an abnormally hazardous condition, through the common law, and through statutory and regulatory obligations to prevent hazardous material from escaping from the Limetree Bay Refinery.

172. Defendants breached their duty to Plaintiffs and the Class.

173. As a direct and proximate result of Defendants' breach, Plaintiffs and Class Members have suffered severe emotional injury.

174. As a result, Plaintiffs and the Class have been damaged as alleged herein.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

## COUNT XII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

175.    Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

176.    The actions of Defendants constitute the intentional infliction of emotional distress on Plaintiffs and Class Members.

177.    In the Virgin Islands, a claim of IIED requires a showing that a party: (1) intentionally or recklessly; (2) engaged in extreme and outrageous conduct that exceeds all possible bounds of decency such that it is regarded as atrocious and utterly intolerable in a civilized society; (3) that caused the plaintiff to suffer severe emotional distress.

178.    Defendants know and understand that exposure to discharge of oil and other chemicals, toxins, and particulates, and other particulates and hazardous substances presented and continues to present serious risks to the health and property of thousands of St. Croix residents.

179.    Defendants knew that before Defendants' ownership, control, and operation of the Limetree Bay Refinery, the property was owned and operated by HOVENSA, LLC, a joint venture between Hess Corporation and Petroleos de Venezuela, the national oil company of Venezuela, and before that by HOVIC, a wholly-owned subsidiary of the Hess Corporation formerly known as Amerada Hess.

180.    Defendants knew that under HOVIC and HOVENSA, the refinery exceeded allowable emissions of known harmful substances, including nitrogen oxide, sulfur dioxide, volatile organic compounds, and benzene.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

181.   Defendants knew that in 2011, investigators discovered that the pipes carrying the refinery's waste product had been corroding, slowly leaking more than 43 million gallons of oil into the island's largest aquifer.

182.   Defendants knew that as a result of the massive leak, the EPA ordered HOVENSA to pay civil penalties of more than $5 million and spend more than $700 million in new pollution controls to protect the public health and resolve Clean Air Act violations in St. Croix. The EPA required HOVENSA to implement new and upgraded pollution controls, more stringent emission limits and aggressive monitoring, and leak detection and repair practices to reduce emissions from refinery equipment and process units.

183.   Defendants knew that instead of paying its fines and undertaking the required improvement projects, the Hess Corporation shut down the HOVENSA facility in 2012.

184.   Defendants knew of the history of prior emissions at the refinery and their impact on the community.

185.   Defendants knew or should have known that the refinery was not in a proper condition to reopen and that the start-up would result in discharges and dangers to Plaintiffs and Class Members.

186.   As a direct and proximate result of Defendants' actions, Plaintiffs and Class Members suffered severe emotional injury.

## VII.   RELIEF REQUESTED

187.   Plaintiffs and members of the putative Class seek the following relief:

   a.) An order naming Plaintiffs' counsel as lead counsel for this matter and any other related or consolidated matters;

   b.) An order naming Plaintiffs lead plaintiff for this matter and any other related or consolidated matters;

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

    c.) Damages;

    d.) Punitive damages where allowable;

    e.) Pre- and post-judgment interest as allowed by law;

    f.) Injunctive relief ceasing Defendants' continued inadequate methods of compensation to victims of Defendants' conduct and inadequate cleanup of the victims' property;

    g.) Declaratory judgment that Defendants are responsible for past and future costs to remedy the harm caused to Plaintiffs, Class Members and their properties;

    h.) Attorneys fees and costs pursuant to any applicable statutes and/or regulations; and

    i.) All other relief this Court deems necessary, just and proper.

## JURY TRIAL DEMAND

188.   Plaintiffs hereby demands a jury trial for all claims so triable.

DATED: June 7, 2021

                            Respectfully submitted,


                            _____/s/ Jennifer Jones_____
                            Jennifer Jones, Esq. (Bar No. 686)
                            **LAW OFFICES OF JENNIFER JONES**
                            9003 Havensight Mall, Ste. 319
                            St. Thomas, V.I. 00802
                            Telephone:  (340) 779-7386
                            Facsimile:   (340) 714-5080
                            jjones@vienvironmentallaw.com

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Complaint*

Kerry J. Miller (*pro hac vice forthcoming*)
Paul C. Thibodeaux (*pro hac vice forthcoming*)
C. Hogan Paschal (*pro hac vice forthcoming*)
**FISHMAN HAYGOOD, L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170
Telephone:  (504) 586-5252
Facsimile:  (504) 586-5250
kmiller@fishmanhaygood.com
pthibodeaux@fishmanhaygood.com
hpaschal@fishmanhaygood.com

Hugh Lambert (*pro hac vice forthcoming*)
J. Christopher Zainey (*pro hac vice forthcoming*)
Brian Mersman (*pro hac vice forthcoming*)
**THE LAMBERT FIRM, PLC**
701 Magazine Street
New Orleans, Louisiana 70130
Telephone:  (504) 581-1750
Facsimile:  (504) 529-2931
hlambert@thelambertfirm.com
czainey@thelambertfirm.com
bmersman@thelambertfirm.com

Daniel K. Bryson (*pro hac vice forthcoming*)
Melissa K. Sims (*pro hac vice forthcoming*)
Blake H. Yagman (*pro hac vice forthcoming*)
**MILBERG  COLEMAN  BRYSON  PHILLIPS
GROSSMAN PLLC**
100 Garden City Plaza
Garden City, NY 11530
Telephone:  (212) 594-5300

dbrysonh@milberg.com
msims@milberg.com
byagman@milberg.com